**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

In re:

**TRANS NATIONAL COMMUNICATIONS
INTERNATIONAL, INC.,**

**Debtor.**

**Chapter 11**

**Case No. 11-19595-WCH**

**ORDER GRANTING DEBTOR'S MOTION (A) TO AUTHORIZE DEBTOR
TO EFFECTUATE ASSET PURCHASE AGREEMENT; (B) TO
AUTHORIZE SALE OF SUBSTANTIALLY ALL ASSETS BY PRIVATE
SALE FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS;
(C) TO AUTHORIZE THE ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS; (D) TO APPROVE CARRIER CONSENT
AND WAIVER AGREEMENTS; AND (E) FOR RELATED RELIEF**

Upon consideration of the *Debtor's Motion (A) to Authorize Debtor to Effectuate Asset
Purchase Agreement; (B) to Authorize Sale of Substantially All Assets by Private Sale Free And
Clear of Liens, Claims And Interests; (C) to Authorize The Assumption And Assignment of
Executory Contracts; (D) to Approve Carrier Consent And Waiver Agreements; and (E) for
Related Relief* (the "Motion")[1] [docket no. 920] filed by Trans National Communications
International, Inc. (the "Debtor"), as debtor and debtor in possession, seeking the entry of an
order (a) authorizing the Debtor to effectuate an asset purchase agreement (the "APA") dated
January 31, 2013, between the Debtor and Blue Casa Telephone, LLC, or its nominee (the
"Buyer"), (b) authorizing the sale of substantially all of the Debtor's assets (the "Acquired
Assets") by private sale (the "Sale") free and clear of all liens, claims and interests, (c)
authorizing the Debtor to assume and assign certain executory contracts and unexpired leases
(the "Assumed Contracts") in conjunction with the proposed sale, (d) approving agreements with
certain suppliers of telecommunication services, and (e) for related relief; and the Court having

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or, if
not defined in the Motion, shall have the meanings ascribed to such terms in the APA or Bidding Procedures (each
as defined herein).

entered an order dated February 14, 2013 (the "Bidding Procedures Order") [docket no. 967]
approving, among other things, bidding and notice procedures for the Sale; and the Court having
conducted a hearing on the Motion on March 13, 2013 (the "Sale Hearing") and the APA, a copy
of which is attached as Exhibit A; and all parties in interest having been heard or having had the
opportunity to be heard; and the Court having reviewed and considered the Motion, and the
arguments of counsel made and the evidence adduced at the Sale Hearing, including the
Affidavits of Adam Cook and Brian Twomey; and upon the record of the Sale Hearing and this
chapter 11 case, and after due deliberation thereon, and good cause appearing therefor, it is
hereby

FOUND AND DETERMINED THAT:[2]

A.      Jurisdiction.  The Court has jurisdiction to hear and determine the Motion and to
grant the relief requested in the Motion pursuant to 28 U.S.C. § 157(b)(1) and 1334(b).

B.      Venue.  Venue of this Chapter 11 case and the Motion in this district is proper
under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. §
157(b)(2).

C.      Statutory Predicates.  The statutory and legal predicates for the relief requested in
the Motion are sections 105, 363 and 365 of the United States Bankruptcy Code (the
"Bankruptcy Code"), Bankruptcy Rules 2002, 6004, 6006, and 9014, and MLBR 6004-1.

D.      Notice.  As is evidenced by, among other things, the certificates of service
appearing at docket numbers 969, 970 and 971, the Motion and APA have been served, in
accordance with the Bidding Procedures Order, on the United States Trustee, the Official
Committee of Unsecured Creditors (the "Committee"), all parties who have submitted a bid to
purchase the Debtor's assets, all secured creditors and all parties who have filed a notice of
appearance and request for notice.  The Debtor has served all other creditors and parties in
interests with the Sale Pleadings Notice (as defined in the Bidding Procedures Order).  Notice of

---

[2]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact to the fullest extent of the law. *See* Fed. R. Bankr. P. 7052.

the Motion, the Sale Hearing, and the assumption and assignment of the Assumed Contracts was

adequate and sufficient under the circumstances of this chapter 11 case and these proceedings

and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy

Rules and the Bidding Procedures Order.  A reasonable opportunity to object and be heard with

respect to the Motion and the relief requested in the Motion was afforded to all interested persons

and entities.

       E.       <u>The Debtor</u>.  The Debtor is a competitive local exchange carrier, a

telecommunications reseller providing local and long distance phone services as well as data

communication services (primarily telephone and internet services) to small and medium sized

businesses throughout the United States.  The Debtor purchases services in high volume from

larger telecommunications network carriers (collectively, the "<u>Carriers</u>") and re-sells those

services to individual end-user customers.

       F.       <u>Acquired Assets Property of the Estate</u>.  The Acquired Assets, including the

Assumed Contracts, are property of the Debtor's estate and title to the Acquired Assets is vested

in the Debtor's estate.

       G.       <u>Sufficiency of Marketing</u>.  The Debtor and its professionals marketed the

Acquired Assets and conducted the marketing and sale process as described in the Motion.

Based upon the record of these proceedings, all creditors and other parties in interest and all

prospective buyers have been afforded a reasonable and fair opportunity to bid for the Acquired

Assets.

       H.       <u>APA</u>.  On January 31, 2013, the Debtor entered into the APA, subject to higher

and better offers.  The APA contemplates that the Debtor and/or the Buyer will execute

additional agreements that are necessary to effectuate the APA (collectively, the "<u>Ancillary</u>

<u>Agreements</u>"), including, without limitation, a management services agreement in the form

attached as Exhibit A to the APA.

       I.       <u>Corporate Authority</u>.  Subject to the entry of this order, the Debtor: (i) had full

power and authority to execute the APA; and (ii) has the power and authority necessary to

consummate the transactions contemplated by the APA, including the execution of the Ancillary

Agreements.  No consents or approvals, other than those provided for in the APA or this order,

are required for the Debtor to consummate the Sale.

J.      Arm's-Length Sale and Buyer's Good Faith.  The APA and the Ancillary

Agreements were negotiated and are undertaken by the Debtor and the Buyer at arm's-length

without collusion or fraud, and in good faith within the meaning of section 363(m) of the

Bankruptcy Code.  The Buyer is not an "insider" of the Debtor as that term is defined by section

101(31) of the Bankruptcy Code.  The Buyer acknowledged that the Debtor was free to deal with

any other party interested in acquiring the Acquired Assets, complied with the Bidding

Procedures Order and agreed to subject its bid to the competitive bidding procedures set forth in

the Bidding Procedures Order.  All payments to be made by the Buyer and other agreements or

arrangements entered into by Buyer in connection with the Sale have been disclosed and the

Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction.  No

common identity of directors or controlling stockholders exists between the Buyer and the

Debtor.  As a result, the Buyer is entitled to the protections of section 363(m) of the Bankruptcy

Code, including in the event this order or any portion thereof is reversed or modified on appeal,

and otherwise has proceeded in good faith in all respects in connection with the proceeding.

K.      Sale Highest and Best Offer.  The consideration provided by the Buyer for the

Acquired Assets under the APA (the "Purchase Price") is the highest and best offer received by

the Debtor, and the Purchase Price constitutes reasonably equivalent value and fair consideration

under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent

Conveyance Act and any other applicable laws.  No other person or entity or group of persons or

entities has offered to purchase the Acquired Assets for an amount that would provide greater

value to the Debtor than the Buyer.  The Court's approval of the Motion, the APA and the

Ancillary Agreements is in the best interests of the Debtor, its estate, its creditors and all other

parties in interest.

L.      <u>Free and Clear Findings Required by Buyer</u>.  The Buyer would not have entered into the APA and would not consummate the Sale if the sale of the Acquired Assets were not free and clear of all liens, claims and interests (each as defined in the Bankruptcy Code, and hereafter as defined in the Bankruptcy Code) pursuant to Bankruptcy Code section 363(f), or if the Buyer would, or in the future could, be liable for any of such liens, claims and interests.  The APA requires that, unless otherwise expressly included in the Assumed Liabilities, the Buyer not be responsible for, among other things, any successor or vicarious liabilities of any kind or character whether known or unknown as of any of the closings, now existing or hereafter arising, whether fixed or contingent, based, in whole or in part, on any theory of law, including without limitation, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity or arising under any employment contract, understanding or agreement, including without limitation, any collective bargaining agreement, employee pension plan, or employee welfare or benefit plans.  A sale of the Acquired Assets other than one free and clear of all liens, claims and interests would yield substantially less value for the Debtor's estate, with less certainty, than the Sale as contemplated.  The Sale contemplated by the APA is therefore in the best interests of the Debtor, its estate and creditors, and all other parties in interest.

M.      <u>Satisfaction of Section 363(f) Standards</u>.  The Debtor may sell the Acquired Assets free and clear of all liens, claims and interests because, with respect to each creditor asserting a claim or interest, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of claims and interests who did not object or who withdrew their objections to the Motion and/or the Sale are deemed to have consented to the Motion and the Sale pursuant to section 363(f)(2).  Those holders of claims and interests who did object fall within one or more of the other subsections of section 363(f).

N.      <u>No Liability under Section 363(n)</u>.  Neither the Debtor nor the Buyer engaged in any conduct that would cause or permit the APA or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

O.      <u>No Fraudulent Transfer</u>.  The APA and Ancillary Agreements were not entered into, and the Sale is not consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtor under the Bankruptcy Code or under applicable non-bankruptcy law. Neither the Debtor nor the Buyer has entered into the APA or the Ancillary Agreements or is consummating the Sale with any fraudulent or otherwise improper purpose.  Given the effort by the Debtor, the Committee and their professionals to market the Acquired Assets, the Purchase Price constitutes reasonably equivalent value and fair consideration.

P.      <u>No Successor Liability</u>.  The Buyer is not an "insider" or "affiliate" of the Debtor, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed or exists between the Buyer and the Debtor.  Under the APA, the Buyer is not purchasing all of the Debtor's assets.  Upon the consummation of the transactions contemplated in the APA, the Buyer will have assumed only the Assumed Liabilities (as defined in the APA), not all of the Debtor's liabilities.  There is no basis to find that the conveyance of the Acquired Assets amounts to a consolidation, merger or *de facto* merger of the Buyer and the Debtor and/or Debtor's estate.

Q.      <u>Sale as Exercise of Business Judgment</u>.  The entry into the APA constituted the exercise by the Debtor of sound business judgment, and the consummation of the transactions contemplated in the APA is in the best interests of the Debtor, its estate and creditors, and all parties in interest.  The Court finds that the Debtor has demonstrated good and sufficient business reasons justifying the Sale of the Acquired Assets to the Buyer because, among other things: (i) the APA constitutes the highest and best offer for the Acquired Assets; (ii) the APA and the closings contemplated in the APA present the best opportunity to realize the value of the Acquired Assets; and (iii) the APA and the closings contemplated in the APA will provide a greater recovery for the Debtor's creditors than would be provided by any other presently available alternative.  The Debtor has demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the Sale.  For the same reasons, the Debtor has demonstrated good and sufficient business reasons justifying the assumption and

assignment to the Buyer of the Assumed Contracts in connection with the consummation of the Sale. The assumption and assignment to the Buyer of the Assumed Contracts is in the best interests of the Debtor, its estate, its creditors, and all parties in interest, and constitutes the valid exercise of the Debtor's business judgment.

R.    <u>Compelling Reasons for a Sale</u>.  Good and sufficient reasons for approval of the APA have been articulated by the Debtor.  The Debtor has demonstrated compelling circumstances for the Sale outside: (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code; and (b) a plan of reorganization, in that, among other things, the consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtor's estate and the Sale will provide the means for the Debtor to maximize distributions to the Debtor's creditors.  To maximize the value of the Acquired Assets and preserve the viability of the business to which the Acquired Assets relate, it is essential that the Sale occur within the time periods set forth in the APA.

S.    <u>Carrier Consent and Waivers</u>.  The APA requires the Debtor to assume and assign to the Buyer (or its nominee) certain of the Debtor's executory contracts with AT&T Corp., Qwest Communications Company, LLC ("<u>QCC</u>") and Qwest Corporation ("<u>QC</u>" and together with QCC, "<u>Qwest</u>"), Sprint Communications Company, LP ("<u>Sprint</u>"), and the wholly-owned subsidiaries of Verizon Communications Inc. ("<u>Verizon</u>", and together with Qwest and Sprint, the "<u>Primary Carriers</u>").  In conjunction with the execution of the APA, each of the Primary Carriers except Qwest has executed a carrier consent and waiver agreement (the "<u>Carrier Consent and Waivers</u>") pursuant to which each of the Primary Carriers consented to the transactions contemplated in the APA, including the assumption of their specified contracts by the Debtor and the assignment of their contracts to the Buyer (or its nominee), and agreed to waive any claims, including cure claims, against the Estate (except for certain preserved claims) pursuant to the terms of the Carrier Consent and Waivers.  The Debtor and Qwest reached a separate agreement entitled *Agreement Regarding (I) Assumption and Assignment of Certain Contracts and (II) Disputed Traffic Resolution* by and among the Debtor, QCC, and QC dated as

of February 5, 2013 (the "Qwest/TNCI Agreement") [docket no. 939] that, among other things, provides for the assumption and assignment of the Debtor's specified contracts with Qwest to the Buyer (or its nominee).  The Court approved the Qwest/TNCI Agreement by order dated February 26, 2013 (the "Qwest/TNCI Settlement Order") [docket no. 985].  The Carrier Consent and Waivers are conditioned on the approval and consummation of the Sale to the Buyer.  The Carrier Consent and Waivers are necessary in order to consummate the transactions contemplated by the APA and are in the best interests of the Debtor, its estate and creditors.

T.    The Debtor and QCC are parties to that certain Wholesale Services Agreement, effective as of March 29, 2002 (and any and all amendments, annexes, exhibits, addenda, schedules, attachments, contract orders and rate change notifications thereto, the "WSA"), pursuant to which QCC provides the Debtor with various telecommunications and related services under various QCC billing account numbers, including 60298422, 60549715, 60549716, 70567006, 71468676, 72675389, 83866482, 72675391, 72958587, 73259290, 78389690, 79318434, 81090518 and 81420322 (provided that any errors in the foregoing or omissions of other account numbers will not constitute an admission by or prejudice the rights of the Debtor or QCC).  The Debtor and QC are parties to various contracts and agreements (and any and all amendments, annexes, exhibits, addenda, schedules, attachments, contract orders and rate change notifications thereto) including, but not limited to, (i) those certain Interconnection Agreements for the States of Arizona, Colorado, Idaho, Iowa, Minnesota, Montana, Nebraska, New Mexico, North Dakota, Oregon, South Dakota, Utah, Washington and Wyoming; (ii) that certain Qwest Local Services Platform Agreement, effective as of December 12, 2010, and (iii) those certain tariffs filed by QC with the Federal Communications Commission and/or certain state regulatory bodies (collectively, the "QC Contracts", and together with the WSA, the "Qwest Contracts"), pursuant to which QC provides the Debtor with various telecommunications and related services under various QC billing account numbers, including BAS63989, BASA6398, BASL6398, 206 Z19 0303 859, 206 Z19 4263 899, 206 Z19 6344 900, 206 Z19 711 7901, 208 111 0150 004, 208 111 6221 360, 208 111 7421 359, 208 Z19 041 9190, 208 Z20 1956 356, 208 Z20 4297 357, 208

Z20 5148 358, 218 727 1347 430, 303 111 1207 650, 303 111 1208 651, 303 111 5557 354, 303

111 5813 355, 307 111 5652 383, 307 111 7771 463, 307 111 7830 382, 319 R22 1522 361, 319

Z19 0306 757, 319 Z19 0307 758, 319 Z22 3350 362, 320 Z22 1208 364, 320 259 1947 242, 320

R22 4219 363, 320 Z19 0050 024, 402 R19 5356 612, 402 Z19 5456 613, 402 Z19 5556 614,

402 Z22 8406 366, 406 111 0413 113, 406 111 0414 114, 406 111 0415 415, 406 111 3657 365,

503 Z19 5152 384, 503 Z19 5573 616, 503 Z19 6241 898, 503 Z19 6288 897, 505 111 0212 568,

505 111 0213 569, 505 111 0214 570, 505 111 4389 375, 520 111 0306 759, 520 111 0308 780,

520 111 8512 352, 520 111 8513 353, 605 R19 6335 378, 605 Z19 5127 652, 605 Z19 5128 653,

605 Z19 6350 379, 701 R22 7891 376, 701 Z19 6268 610, 701 Z22 7221 377, 801 111 0010 001,

801 111 3343 618, 801 111 5280 380, 801 111 6738 381 and 952 854 0010 150 (provided that

any errors in the foregoing or omissions of other account numbers will not constitute an

admission by or prejudice the rights of the Debtor or QC).

     U.    Cure Amounts.  As is evidenced by, among other things, the certificates of service

appearing at docket numbers 970 and 987, the Debtor provided notice of proposed cure amounts

(the "Cure Amounts") with respect to the Assumed Contracts with non-Carrier parties.  Any

objections to the Cure Amounts have either been resolved or are overruled.  Parties who failed to

object to the Cure Amounts have waived any objection to the Cure Amounts.  Upon the payment

of the Cure Amount to the relevant party, there will be no outstanding defaults of the Debtor and

its estate under the non-Carrier Assumed Contracts.  A list of the Cure Amounts is attached

hereto as Exhibit B.

     V.    Contracts Assignable.  Any provision of the Assumed Contracts or applicable

non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as

prohibiting, restricting, or conditioning assignment of any Assumed Contract have been satisfied

or are otherwise unenforceable under section 365 of the Bankruptcy Code.

     W.    Adequate Assurance.  The Buyer has demonstrated adequate assurance of future

performance, within the meaning of section 365 of the Bankruptcy Code, with respect to all of

the Assumed Contracts.

X.      Contracts Binding upon Buyer.  Upon their assignment to the Buyer (or its nominee), the Assumed Contracts shall be valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this order.

Y.      Disclosure.  With respect to any agreements entered into between the Buyer and the Debtor's officers, directors and/or holders of equity interests in the Debtor regarding compensation or future employment and as set forth in the Twomey Affidavit, the Debtor and the Buyer have disclosed the material terms of such agreements.

Z.      Amendment of APA.  By agreement of the Debtor and the Buyer, the APA shall be amended as follows: (i) the date "May 24, 2013" appearing in Sections 9.2(a)(ii)(D) and 9.2(a)(iii)(B) of the APA shall be changed to "June 30, 2013"; and (ii) for as long as the Committee exists, Section 9.4 of the APA shall be changed to add counsel for the Committee as a notice party at the following address: Kenneth Misken, Miles & Stockbridge, 1751 Pinnacle Drive, Suite 500, Tysons Corner, Virginia, 22102, fax: (703) 610-8686.

AA.      Cisco Leases.  The Debtor and Cisco Systems Capital Corporation ("Cisco") are parties to unexpired equipment leases (collectively the "Cisco Leases") that the Debtor proposes to assume and assign to the Buyer.  The Debtor and Cisco agree that, as of the Petition Date, the amount owed to Cisco with respect to the Cisco Leases was $4,659.99 (the "Prepetition Cisco Cure").

BB.      Resolution of Objections.  The following objections have been resolved either by stipulation or by language included in this order: (i) the objection filed by the Massachusetts Department of Unemployment Assistance (the "DUA") appearing at docket number 964; (ii) the objection filed by the Universal Service Administrative Company ("USAC") appearing at docket number 989; (iii) the objection filed by the Committee appearing at docket number 990; and (iv) the objection filed by the Cisco appearing at docket number 991.

CC.      No Sub Rosa Plan.  The Sale does not constitute a *sub rosa* Chapter 11 plan.  The Sale neither restructures the rights of the Debtor's creditors nor dictates a plan for the Debtor.  It is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.     <u>Motion Granted</u>.  The relief requested in the Motion is granted.

2.     <u>Objections Overruled</u>.  All objections to the relief sought in the Motion that have not been withdrawn, waived, settled or otherwise dealt with in this order or on the record at the Sale Hearing, are hereby overruled on the merits.  The *Motion by Debtor for Order (A) Approving Stipulation by and Between the Debtor, Department of Unemployment Assistance and Blue Casa Telephone, LLC Regarding Applicable Unemployment Insurance Contribution; (B) Limiting Notice and Shortening Associated Notice Period; and (C) Scheduling a Hearing for March 13, 2013* [docket no. 1026] is granted and the accompanying stipulation between the Debtor, the Buyer and the DUA is approved.  The *Motion by Debtor for Order (A) Approving Stipulation by and Between the Debtor, OSG and Blue Casa Telephone, LLC for Assumption of Executory Contract With OSG and Related Cure; (B) Limiting Notice and Shortening Associated Notice Period; and (C) Scheduling a Hearing for March 13, 2013* [docket no. 998] is granted and the accompanying stipulation between the Debtor, the Buyer and OSG is approved.

3.     <u>Approval</u>.  Pursuant to Bankruptcy Code sections 105 and 363, the APA, the Ancillary Agreements, and the Sale of the Acquired Assets are hereby approved.  Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtor and the Buyer are each hereby authorized to take any actions necessary or appropriate to: (i) consummate the Sale of the Acquired Assets to the Buyer and the closing of the Sale in accordance with the APA, the Ancillary Agreements and this order; (ii) assume and assign the Assumed Contracts in accordance with the APA; and (iii) fully consummate the APA together with all additional instruments and documents that may be reasonably necessary or desirable to fully consummate the APA.  The Debtor is hereby authorized and directed to perform each of its covenants and undertakings as provided in the APA and the Ancillary Agreements prior to or after closing without further order of the Court.  The Buyer shall be deemed to have assumed the Assumed Liabilities as of the applicable closing, as provided in the APA.  The Buyer and the Debtor shall have no obligation to close the Sale except as is contemplated and provided for in the APA.

4.      <u>Authorization to Assume and Assign</u>.  Pursuant to section 365(f) of the
Bankruptcy Code, notwithstanding any provision of any Assumed Contract or applicable non-
bankruptcy law that prohibits, restricts, or conditions the assignment of the Assumed Contracts,
the Debtor is authorized to assume the Assumed Contracts and to assign the Assumed Contracts
to the Buyer (or its nominee), which assumption and assignment shall take place at and be
effective as of the Final Closing (as defined in the APA), unless otherwise provided in an order
of this Court or in a written agreement executed by the Buyer and a counter-party to an Assumed
Contract.  Until the date that is seven (7) days prior to the Final Closing, the Buyer may, by
notice to Seller, designate contracts, agreements, leases and/or licenses that will not be assumed
and assigned notwithstanding their prior inclusion in the Contract Assumption Schedules or prior
designation by the Buyer.  Pursuant to the APA and except as may otherwise be agreed to in
writing by the Debtor and the Buyer, executory contracts and unexpired leases designated by
Buyer will be assumed by the Debtor and assigned to Buyer at the Final Closing.  Except as may
be provided in an agreement between the Buyer and a Carrier, there shall be no accelerations,
assignment fees, increases, or any other fees charged to the Buyer or the Debtor as a result of the
assumption and assignment of the Assumed Contracts.

5.      <u>Assumption Conditioned upon Closing</u>.  The Debtor's assumption of the
Assumed Contracts is subject to the consummation of the Sale of the Acquired Assets to the
Buyer.  To the extent that an objection by a counterparty to any Assumed Contract, including all
objections related to Cure Amounts, is not resolved prior to the Initial Closing Date (as defined
in the APA), the Debtor, in consultation with the Buyer, may elect to:  (i) not assume such
Assumed Contract; (ii) postpone the assumption of such Assumed Contract until the resolution
of such objection; or (iii) reserve the disputed Cure Amount and assume the Assumed Contract
as provided in this order.  So long as the Debtor holds the claimed Cure Amount in reserve, and
there are no other unresolved objections to assumption and assignment of the applicable
Assumed Contract, the Debtor may assume and assign the Assumed Contract that is the subject

of the objection.  Under such circumstances, the objecting non-Debtor counterparty's recourse is limited to the funds held in reserve.

6.    <u>Carrier Consent and Waivers</u>.  The Carrier Consent and Waivers are approved.

7.    <u>Qwest Contracts</u>.  Pursuant to Section 365 of the Bankruptcy Code, as of the final closing of a sale of some or substantially all of the Debtor's assets, the Qwest Contracts will be deemed to be assumed by the Debtor and assigned to Buyer on the terms and conditions set forth in the Qwest/TNCI Agreement and the *Agreement Regarding Assumption and Assignment of Certain Contracts* dated as of January 29, 2013, by and among Buyer, QCC and QC (the "<u>Qwest/Buyer Agreement</u>" and together with the Qwest/TNCI Agreement, the "<u>Qwest Assumption and Assignment Agreements</u>").  The Debtor will escrow from the proceeds of the Sale amounts sufficient to pay in full the "Other Post-Petition Amounts" as defined in the Qwest/TNCI Agreement.

8.    <u>Transfer Free and Clear</u>.  Upon the applicable closing, as provided in the APA: (a) the Debtor is hereby authorized to consummate, and, except for the Assumed Liabilities, shall be deemed for all purposes to have consummated, the sale, transfer and assignment of all of the Debtor's right, title and interest in the applicable Acquired Assets to the Buyer free and clear of (i) any and all liens, including any statutory or other lien, mortgage, pledge, security interest, hypothecation, deed of trust, deemed trust, option, right of use, rights of first offer or first refusal, servitude, encumbrance, adverse possession, charge, prior claim, lease, conditional sale arrangement or, other similar restriction of any kind or consequence; (ii) any and all liabilities (other than the Assumed Liabilities), including debts, liabilities and obligations, whether accrued or fixed, direct or indirect, liquidated or unliquidated, absolute or contingent, matured or unmatured, known or unknown or determined or undeterminable, including any tax liability, with such interests to attach to the sale proceeds in the same validity, extent and priority as immediately prior to the Sale, subject to any rights, claims and defenses of the Debtor and other parties in interest; and (iii) any and all claims, including rights or causes of action (whether in law, equity, or admiralty), obligations, demands, restrictions, interests and matters of any kind or

nature whatsoever, whether arising prior to or subsequent to the commencement of this case, and

whether imposed by agreement, understanding, law, equity or otherwise (including, without

limitation, any claims and encumbrances; and (b) except as otherwise expressly provided in the

APA, all such claims and interests (other than Assumed Liabilities) shall not be enforceable

against the Buyer or the Acquired Assets.  Unless otherwise expressly included in the Assumed

Liabilities, the Buyer shall not be responsible for any liens or claims, including in respect of any

successor or vicarious liabilities of any kind or character whether known or unknown as of any

of the closings, now existing or hereafter arising, whether fixed or contingent, based, in whole or

in part, on any theory of law, including without limitation, any theory of antitrust, environmental,

successor or transferee liability, labor law, de facto merger or substantial continuity or arising

under any employment contract, understanding or agreement, including without limitation, any

collective bargaining agreement, employee pension plan, or employee welfare or benefit plans.

A certified copy of this order may be filed with the appropriate clerk and/or recorder to act to

cancel all claims or interests of record.

9.  <u>Valid Transfer; Attachment to Sale Proceeds</u>.  The transfer to the Buyer of the

Debtor's right, title and interest in the Acquired Assets pursuant to the APA shall be, and hereby

is deemed to be, a legal, valid and effective transfer of the Debtor's right, title and interest in the

Acquired Assets, with such claims and interests attaching to the sale proceeds in the same

validity, extent and priority as immediately prior to the Sale, subject to any rights, claims and

defenses of the Debtor and other parties in interest.

10.  <u>Exculpation and Release</u>.  None of the Buyer or its affiliates, successors and

assigns shall have or incur any liability to, or be subject to any action by the Debtor or any of its

predecessors, successors or assigns, arising out of the negotiation, investigation, preparation,

execution, delivery of the APA and the Ancillary Agreements and the entry into and

consummation of the Sale, except as expressly provided in the APA, the Ancillary Agreements,

and this order.  None of the Debtor or its affiliates, successors and assigns shall have or incur any

liability to, or be subject to any action by the Buyer or any of its predecessors, successors or

assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the APA

and the Ancillary Agreements and the entry into and consummation of the Sale, except as

expressly provided in the APA, the Ancillary Agreements, and this Order.

11.    Injunction.  Except as expressly provided in the APA or by this order, all persons

and entities, including, but not limited to, all debt security holders, equity security holders,

governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade

creditors, litigation claimants and other persons, holding claims and interests of any kind or

nature whatsoever against or in the Debtor or the Debtor's interests in the Acquired Assets

(whether known or unknown, legal or equitable, matured or unmatured, contingent or

noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or

subsequent to the commencement of this chapter 11 case, whether imposed by agreement,

understanding, law, equity or otherwise), including, without limitation, the nondebtor party or

parties to each Assumed Contract, arising under or out of, in connection with, or in any way

relating to, the Acquired Assets or the transfer of the Debtor's interests in the Acquired Assets to

the Buyer, shall be and hereby are forever barred, estopped and permanently enjoined from

asserting, prosecuting or otherwise pursuing claims and interests against the Buyer or its

affiliates, successors and assigns, the Acquired Assets, or the interests of the Debtor in such

Acquired Assets. Following the transfer of an Acquired Asset to the Buyer, no holder of an

interest against the Debtor shall interfere with the Buyer's title to or use and enjoyment of the

Debtor's interests in the Acquired Assets based on or related to such claims and interests.  All

persons are hereby enjoined from taking action that would interfere with or adversely affect the

ability of the Debtor to transfer the Acquired Assets in accordance with the terms of the APA,

this order and/or a written agreement between the Buyer and a Carrier.

12.    Obligations for Assumed Contracts.  Upon assumption of the Assumed Contracts

by the Debtor and assignment of same to the Buyer (or its nominee), the Assumed Contracts

shall be deemed valid and binding, in full force and effect in accordance with their terms, subject

to the provisions of this order. As of the assumption and assignment of an Assumed Contract to

the Buyer in accordance with this order, the Buyer shall succeed to the entirety of Debtor's rights

and obligations in the Assumed Contract first arising and attributable to the time period

occurring on or after the date the assignment of the Assumed Contract becomes effective.

13.     Cure Amounts for non-Carrier Assumed Contracts.  Upon the entry of this order,

(i) all defaults (monetary and non-monetary) under the non-Carrier Assumed Contracts through

the date of this order shall be deemed cured and satisfied through the payment of the applicable

Cure Amount for such Assumed Contract, (ii) no other amounts will be owed by the Debtor, its

estate or the Buyer with respect to amounts first arising or accruing during, or attributable or

related to, the period before this order with respect to the non-Carrier Assumed Contracts, (iii)

any and all persons or entities shall be forever barred and estopped from asserting a claim against

the Debtor, its estate, or the Buyer that any additional amounts are due or defaults exist under the

non-Carrier Assumed Contracts that arose or accrued, or relate to or are attributable to the period

before this order.  The Cure Amounts, whether agreed or judicially resolved, are deemed to be

the entire cure obligation due and owing under the non-Carrier Assumed Contracts under section

365(b).

14.     Good Faith Buyer. The APA and Ancillary Agreements have been entered into by

the Buyer in good faith and the Buyer is a good faith Buyer of the Acquired Assets as that term is

used in Bankruptcy Code section 363(m). The Buyer is entitled to all of the protections afforded

by section 363(m) of the Bankruptcy Code.

15.     No Bulk Sales.  No bulk sales law or any similar law of any state or other

jurisdiction shall apply in any way to the Sale.

16.     Fair and Equivalent Value.  The Purchase Price shall be deemed for all purposes

to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and

any other applicable law, and the Sale may not be avoided, or costs or damages imposed or

awarded under section 363(n) or any other provision of the Bankruptcy Code, the Uniform

Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar state

laws.

17.     <u>Transfer of Marketable Title</u>.  On the applicable closing date under the APA, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Debtor's right, title and interest in the Acquired Assets or a bill of sale transferring good and marketable title in such Acquired Assets to the Buyer on the applicable closing date pursuant to the terms of the APA, free and clear of all Claims and Interests (other than Assumed Liabilities).

18.     <u>No Successor Liability</u>.  Except for the Assumed Liabilities, the Buyer's acquisition of the Acquired Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted.  The Buyer's operations shall not be deemed a continuation of the Debtor's business as a result of the acquisition of the Acquired Assets.

19.     <u>Release of Claims and Interests</u>.  This order: (a) is and shall be effective as a determination that, other than the Assumed Liabilities, all claims and interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the transfer of the Acquired Assets to the Buyer have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected; and (b) is and shall be binding upon and shall authorize all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets conveyed to the Buyer. All recorded claims and interests against the Acquired Assets from their records, official and otherwise shall be deemed stricken.

20.     <u>Approval to Release Claims and Interests</u>.  If any person or entity who has filed statements or other documents or agreements evidencing liens on, or claims or interests in, the Acquired Assets shall not have delivered to the Debtor before the Initial Closing, in proper form

for filing and executed by the appropriate parties, termination statements, instruments of

satisfaction, releases of liens and easements, and any other documents necessary for the purpose

of documenting the release of all liens which the person or entity has or may assert with respect

to the Acquired Assets, the Debtor and the Buyer are hereby authorized to execute and file such

statements, instruments, releases and other documents on behalf of such person or entity with

respect to the Acquired Assets.

21.     Cooperation from Counterparties.  All counterparties to the Assumed Contracts

shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer,

and, except as provided in a written agreement between the Debtor and/or the Buyer and such

counterparty, shall not charge the Debtor or the Buyer for any instruments, applications,

consents, or other documents which may be required or requested by any public or quasi-public

authority or other party or entity to effectuate the applicable transfers in connection with the

Sale.

22.     Governmental Authorization to Effectuate Sale and Assignments.  Each and every

federal, state and governmental agency or department, and any other person or entity, is hereby

authorized to accept any and all documents and instruments in connection with or necessary to

consummate the transactions contemplated by the APA.

23.     No Suspension by Governmental Units.  No governmental unit may revoke or

suspend any right, license, trademark or other permission relating to the use of the Acquired

Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of this

Chapter 11 case or the consummation of the Sale.

24.     Inconsistencies with Prior Orders, Pleadings or Agreements.  Except as provided

in paragraph 25 and 26 of this order and paragraph 11 of the Qwest/TNCI Settlement Order, to

the extent this order is inconsistent with any prior order or pleading with respect to the Motion in

this Chapter 11 case, the terms of this order shall govern.  To the extent there is any

inconsistency between the terms of this order and the terms of the APA (including all ancillary

documents executed in connection therewith), the terms of this order shall govern.

25.     <u>Inconsistencies with Verizon Stipulation</u>.  To the extent of any inconsistency between (a) the APA, this order, any other court order or any confirmed Chapter 11 plan and (b) the Stipulation and Consent Order to be entered by the Court contemporaneously herewith with respect to the assumption of the Verizon contracts (the "Verizon Stipulation"), the Verizon Stipulation will govern.

26.     <u>Inconsistencies with Qwest Assumption and Assignment Agreements</u>.  To the extent of any inconsistency between (a) the APA, this order, any other court order or any confirmed Chapter 11 plan and (b) the Qwest Assumption and Assignment Agreements, the Qwest Assumption and Assignment Agreements will govern.

27.     <u>Effect upon Property of the Estate other than Acquired Assets</u>.  Except as expressly provided in the APA or the Ancillary Agreements, nothing in this order shall be deemed to waive, release, extinguish or estop the Debtor or its estate from asserting or otherwise impair or diminish any right (including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not an Acquired Asset.

28.     <u>Subsequent Orders and Plan Provisions</u>.  This order shall not be modified by any Chapter 11 plan confirmed in this case or subsequent order of this Court.

29.     <u>Binding Effect of Order</u>.  This order and the APA shall be binding in all respects upon all creditors and interest holders of the Debtor, all non-debtor parties to the Assumed Contracts, the Committee, all successors and assigns of the Debtor and its affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtor's Chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code, and the APA shall not be subject to rejection or avoidance under any circumstances.  If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this order and the rights granted to the Buyer hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.

30.      Failure to Specify Provisions.  The failure specifically to include or make

reference to any particular provisions of the APA or any Ancillary Agreement in this order shall

not diminish or impair the effectiveness of such provision, it being the intent of the Court that the

APA and the Ancillary Agreements are authorized and approved in their entirety.

31.      Retention of Jurisdiction.  The Court retains jurisdiction with respect to all

matters arising from or related to the implementation of this order, including, without limitation,

the authority to: (i) interpret, implement and enforce the terms and provisions of this order

(including the injunctive relief provided in this order) and the terms of the APA, the Ancillary

Agreements, all amendments thereto and any waivers and consents thereunder; (ii) protect the

Buyer, or the Acquired Assets, from and against any of the claims or interests; (iii) compel

delivery of all Acquired Assets to the Buyer; (iv) compel the Buyer to perform all of its

obligations under the APA; and (v) resolve any disputes arising under or related to the APA, the

Ancillary Agreements, or the Sale.

32.      No Material Modifications.  The APA, the Ancillary Agreements and any related

agreements, documents or other instruments may be modified, amended, or supplemented

through a written document signed by the parties thereto in accordance with the terms thereof

without further order of the Court; provided, however, that any such modification, amendment or

supplement is neither material nor materially changes the economic substance of the transactions

contemplated hereby.

33.      Immediate Effect.  This order constitutes a final order within the meaning of 28

U.S.C. § 158(a).  Notwithstanding any provision in the Bankruptcy Rules to the contrary, the

Court expressly finds there is no reason for delay in the implementation of this order and,

accordingly: (i) the terms of this order shall be immediately effective and enforceable upon its

entry; (ii) the Debtor is not subject to any stay in the implementation, enforcement or realization

of the relief granted in this order; and (iii) the Debtor may, in its discretion and without further

delay, take any action and perform any act authorized under this order.

34.    The Debtor may not assume and assign the Cisco Leases unless Cisco receives the payment of both the Prepetition Cisco Cure and the post-petition amount due under the Cisco Leases, if any.  All rights, claims and defenses of the Debtor and Cisco with respect to the post-petition amount due under the Cisco Leases are preserved.  Cisco's objection to the Sale Motion shall be deemed withdrawn.

35.    <u>Resolution of the USAC Objection</u>.  With the consent of the Debtor, the Buyer, and USAC, the inclusion of this section in this Sale Order resolves the issues set forth in USAC's Limited Objection [Docket No. 989].  For the purposes of this section, the term "Debtor" shall include any successor representative of the Debtor, including any Chapter 11 trustee, Chapter 7 trustee, liquidating trustee, or other fiduciary designated and authorized to wind down the Debtor's business operations and/or complete the liquidation of the Debtor.

<u>Compliance with Applicable Law</u>.

a.    Nothing in this order shall relieve the Debtor, or any successor estate representative, from complying with the Debtor's reporting and payment obligations to USAC, including any payment obligations to the Universal Service Fund ("<u>USF</u>").  For the avoidance of doubt and without limitation, the Debtor shall be responsible for satisfaction of federal USF reporting and payment obligations as to any revenue it receives from the provision of interstate telecommunications services up to and until the assets producing such revenues are transferred to the Buyer at a Closing and for the submission of Revenue Reports required to "true-up" the Debtor's 2012 and 2013 projected revenue to the Debtor's actual revenues that will occur in 2013 and 2014, respectively. Nothing in this order shall modify any post-Petition Date deadlines under applicable law.

<u>499 Filer ID and SPIN Number Excluded Assets</u>.

b.    The Debtor's FCC Form 499 Filer ID (the "<u>Filer ID</u>") is an Excluded Asset and shall not be transferred to the Buyer.

c.    The Debtor's Service Provider Identification Number (the "<u>SPIN</u>") is an Excluded Asset and shall not be transferred to the Buyer.

<u>Deactivation of Debtor's Filer ID and SPIN</u>.

d.    On or before the tenth (10th) business day after the Final Closing Date, the Debtor shall submit to USAC the documentation required to deactivate the Debtor's Filer ID in order to establish a "deactivation date."

e.  On or before the tenth (10th) business day after the Final Closing Date, the Debtor shall submit to USAC the documentation required to deactivate the Debtor's SPIN.

Buyer to Obtain Filer ID.

f.  The Buyer or any designee or affiliate of the Buyer that will be responsible for satisfaction of federal USF reporting and payment obligations, shall take the necessary steps to obtain from USAC a 499 Filer ID prior to the first Closing at which Buyer acquires any assets of Debtor that produce interstate revenue subject to USF reporting and payment obligations, and shall be responsible for compliance with federal USF reporting and payment obligations as to any interstate revenue it receives from the operation of such assets as of the date of such Closing.

True-Up Obligations.

g.  Except as may otherwise be agreed to by the Debtor and USAC, if submission of any FCC Form 499-A (including the 2014 FCC Form 499-A and any amended FCC Form 499-A) by the Debtor results in an upward adjustment of the Debtor's USF obligations for any revenue period after the Petition Date and prior to the Final Closing Date, the Debtor shall be responsible for such USF obligations.

h.  Except as may otherwise be agreed to by the Debtor and USAC, in the event that the submission of any FCC Form 499-A (including the 2014 FCC Form 499-A and any amended FCC Form 499-A) by the Debtor results in a "net credit" of the Debtor's USF obligations during the Chapter 11 case, then the Debtor shall be entitled to payment of that net credit.

i.  All of the Debtor's and USAC's respective rights, claims and defenses with respect to any true-up obligations and/or credits are hereby preserved.

Miscellaneous.

j.  Nothing in this Sale Order shall prohibit, limit, restrict or expand USAC's right to file requests for payment of administrative claims or to amend its proofs of claim. All of the Debtor's rights, claims and defenses with respect to any claims asserted by USAC are hereby preserved.

k.  Except as may otherwise be agreed to by the Debtor and USAC, nothing in this Sale Order shall prohibit, limit, restrict or expand USAC's rights to (i) audit the Debtor's reported contributor revenues, including with respect to pre-sale and pre-petition periods, (ii) assess and invoice any USF Obligations resulting from any such audit, and (iii) pursue all of USAC's rights related to any such audit including, without limitation, filing claims or amending previously filed claims against the Debtor.  All of the Debtor's rights, claims and defenses with respect to any request to audit, audit or claims asserted by USAC are hereby preserved.

36.  The Debtor is authorized and directed to pay the undisputed portion of the secured

claims of RBS Citizens Bank, NA and RBS Asset Finance, Inc. at the Initial Closing, and shall

reserve cash equal to the disputed portion of such secured claims, if any, pending further order of the Court.

37.    <u>Provisions Non-Severable</u>. The provisions of this order are nonseverable and mutually dependent.

03/14/2013

_____
The Honorable William C. Hillman
UNITED STATES BANKRUPTCY JUDGE

Dated:  March 14, 2013

646452